GULOTTA, Judge.
Pursuant to a petition in the Juvenile Court for the Parish of Jefferson alleging that the juvenile, Robin Sapia, is in need of care as defined in Code of Juvenile Procedure Article 13(14) [1] on December 4, 1979, the trial judge committed the juvenile to the custody of the Administrator of Coliseum House, a residential treatment facility, for placement in that facility for an indefinite period of time.
*43 On December 13, 1979 the court-appointed attorney for the juvenile filed a Rule to Show Cause why the State of Louisiana should not provide payment to Coliseum House for the housing, care and treatment of the minor. In the show cause motion it is alleged that the parents of the minor “are unable to pay” the amount required for maintaining the juvenile in Coliseum House.
The Department of Health and Human Resources opposed the rule to show cause claiming that they alone have the exclusive authority for placement of juveniles in need of care (where custody has been placed with them) and that the proper placement of Robin is South East Louisiana State Hospital at Mandeville and not Coliseum House.
The trial judge, after receiving an oral stipulation from the Commissioner of Administration of the State of Louisiana acknowledging that the state, the Louisiana Department of Health and Human Resources, and its subsidiary agency, the Office of Human Development, had sufficient funds and authority to expend those funds to place Robin Sapia in a facility most appropriate for the child’s needs and was willing to assume that economic responsibility when appropriate placement had been determined, ordered the Louisiana Department of Health and Human Resources to pay for the expenses incurred for the housing, care and treatment of Robin in Coliseum House.
We are confronted in the Department’s appeal with whether the Department of Health and Human Resources has the ultimate authority for the placement of a child adjudged to be in need of care, or whether the court of competent jurisdiction has the authority to make that determination. We are confronted also with whether the state, through the Department of Health and Human Resources, can be compelled, by order of the court, to pay the costs of placement, care and treatment in a private, licensed facility when the Department believes that a state-operated residential treatment center is a proper placement.
It is the Department’s contention that the responsibility for placement, care and treatment for juveniles in need of care has been statutorily placed with the Office of Human Development of the Department of Health and Human Resources. See LSA-R.S. 36:258. The Department points out further that, consistent with that responsibility, the legislature also provided that the exclusive authority for the selection of the treatment program and center for placement rests with the Department and not with the juvenile court, when custody of the child had been placed with the Department.[2]
In connection with the responsibility for payment, the Department, relying on LSA-R.S. 15:1081, claims that the sole statutory authorization for payment of the cost of care and treatment of juveniles in need of care rests with them.[3] We reject these contentions.
*44 If we were to follow the logic of the Department’s argument, the constitutionally-created juvenile courts and family courts of this state would be completely powerless and ineffective in the determination of the needs and best interests of the juveniles who appear before those courts. Further, were we to follow the rationale of the Department’s position, where there exist different opinions between the Department and the court as to the proper treatment for a child in need of care (as in our case), the bureaucratic agency would rule supreme in its determination without the intervention, supervision, or control of the court. In that event there would be no appeal from a decision of the Department of Health and Human Resources, resulting in unfettered and unbridled authority of a state agency not subject to judicial review in any case. This untenable position would contravene and violate the basic constitutional rights and guaranties secured to all citizens of this state. It also would completely nullify the effect and statutory scheme of the Code of Juvenile Procedure, as well as the operation of the juvenile and family courts in accordance with the guidelines set forth in the Code.
Commencing with the declaration of rights of the LSA-Const.1974, Art. 1, § 2 provides:
“Section 2. No person shall be deprived of life, liberty, or property, except by due process of law.”
Further, the right to judicial review is guaranteed in Art. 1, § 19 of the Constitution and reads as follows:
“Section 19. No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law.”
Also included in the Declaration of Rights is the right of access to the courts by citizens of this state. Art. 1, § 22 provides:
“Section 22. All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.”
In addition, in the 1974 Constitution, under Distribution of Powers, Art. 2, § 1 provides:
“Section 1. The powers of government of the state are divided into three separate branches: legislative, executive, and judicial.”
“Section 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.”
The painstakingly-prepared Code of Juvenile Procedure, governing all courts exercising juvenile jurisdiction in this state, sets forth in explicit and clear language its purpose and construction in Art. 2 of the Code, which provides as follows:
“Art. 2. Purpose and construction.
The provisions of this Code shall be liberally construed to the end that each child coming within the jurisdiction of the court shall be accorded due process and shall receive, preferably in his own home, the care, guidance, ’ and control that will be conducive to his welfare and the best interests of the state, and that in those instances when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him. These Code provisions shall be construed to secure simplicity in procedure, fairness in adjudication and administration, and the elimination of unjustifiable delay.”
Consistent with the mandate of Art. 2, subsequent provisions of the Code outline specifically the responsibilities, duties and authority of a court exercising jurisdiction over juveniles in this state. Art. 19 of the Code provides:
“Art. 19. Inherent power and authority of courts.
*45 A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders. It has authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that the juvenile proceedings shall be conducted with dignity and in an orderly and expeditious manner.”
Consistent also with the constitutional and statutory scheme of the ultimate responsibility for the determination of the best interest of the child being placed with the juvenile courts are the following Code of Juvenile Procedure articles:
“Art. 78. Predisposition investigation and report.
Following adjudication, the court may order a predisposition investigation. The investigation shall include the circumstances, needs, and social history of the child and his family, and also the circumstances surrounding the factual allegations of the petition. A written report of the investigation and findings shall be submitted to the court prior to the disposition hearing.”
“Art. 79. Physical and mental examination for disposition.
Following the adjudication, the court may order such physical and mental examination and evaluation of the child and his parents as may be helpful in determining a fair and just disposition.”
“Art. 85. Disposition; children in need of care.
A. In a case in which a child has been adjudicated to be in need of care, the court may:
(1) Place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child;
(2) Place the child in the custody of a private or public institution or agency;
(3) Commit a child found to be mentally defective to a public or private mental institution or institution for the mentally defective; or
(4)Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child.
B. A child in need of care shall not be committed to the Department of Corrections.”
“Art. 86. Disposition; generally.
A. The court should impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. The court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.
B. If the court commits a child to a private institution or agency, it shall select one that is licensed by the Department of Health and Human Resources. Where no institution, social agency or association licensed by the Department of Health and Human Resources for care of placement of children is available to the court, the court may commit the child to some other institution, social agency, or association, which in the judgment of the court is suitable for the care of such child.”
“Art. 91. Motion to modify judgment of disposition.
A. On its own motion or on motion of the district attorney, the child, his parents or the probation officer, the court may modify a judgment of disposition.”
“Art. 93. Modification of judgment of disposition.
A judgment of disposition may be modified if the court finds that the condition and circumstances justify the modification.
In delinquency proceedings, if a judgment of disposition places a child on probation, the judgment may not be modified to assign the child to the custody of the Department of Corrections unless the court finds that a condition of probation has not been observed.”
*46 “Art. 97. Judgments appealable.
In cases in which a child is adjudicated to be a delinquent, in need of supervision, or in need of care, an appeal may be taken only from a judgment of disposition, and shall be to the appropriate court of appeal.
The appeal shall include all errors assigned concerning the adjudication and disposition.”
It is important to recognize that any deprivation of freedom or of the right to prescribed treatment or any sanction imposed on any individual must be protected by the constitutional right of due process in the courts of our state, subject to review by the proper and appropriate appellate tribunal. These sacred guaranties cannot be relegated to a bureaucratic agency not subject to review by any judicial forum. We would be hard-pressed to find any state or federal agency with such broad, unquestioned and unlimited authority as that claimed by the Department of Health and Human Resources in the instant case.
It is apparent from a reading of the statutes relied upon by the Department in the instant case that the legislative intent was to place the responsibility for the placement, care and treatment of juvenile offenders and those in need of supervision and in need of care with the Department of Health and Human Resources and the Office of Human Development. It is clear that the legislative intent was to provide for centralized responsibility for care, in order to promote the efficient administration of resources and programs for those who require these services. Furthermore, with the creation of this department, budgetary control apparently could be more efficiently administered. It could not have been the intent of the legislature, in the creation of this department and the placing of responsibility ánd authority upon it, that the courts exercising juvenile jurisdiction in this state would be deprived of their constitutional mandate to adjudicate and make dispositions which the judge believes to be in the best interest of those persons who appear before the court. See LSA-C.J.P. Arts. 5 and 86.
Accordingly, we conclude that in a dispute between the juvenile or family court of competent jurisdiction and the Department of Health and Human Resources as to the proper placement of a juvenile who has been adjudged a delinquent, in need of supervision, in need of care or in any case in which the competent juvenile or family court has exclusive jurisdiction, the final and ultimate determination of the dispute and issue rests with the juvenile or family court, and the Department of Health and Human Resources is compelled to abide by the decisions of those courts, subject to appellate review. Having so concluded, we affirm the judgment of the trial court.

AFFIRMED.

. C.J.P. article 13(14) reads as follows:
“(14) ‘Child in need of care’ means a child: (a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental or emotional health of the child;
(b)- Whose physical, mental or emotional condition is substantially threatened or impaired as a result of the refusal or neglect of his parent to supply the child with necessary food, clothing, shelter, medical care, counseling or education, or as a result of the parent’s neglect or imposition of cruel punishment; or
(c)Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent, or because of any other reason.”

. LSA-R.S. 13:1580, relied on by the Department, provides:
“§ 1580. Decree
Notwithstanding any other provision of law to the contrary, including but not limited to any provision of the code of juvenile procedure, when a child is referred to the Department of Health and Human Resources for care and treatment, and when such care and treatment are to be provided in a setting other than his own home or the home of a relative, the child shall be assigned to the custody of the Department of Health and Human Resources, rather than to a particular institution or facility. This provision for the assignment of custody shall apply regardless of whether the care and treatment are provided directly by the Department of Health and Human Resources or through purchase of service arrangements for which the Department of Health and Human Resources provides funding. The Department of Health and Human Resources shall have authority to select from the resources that are available the types of services and service setting most appropriate to the child’s needs and to place the child in that setting.”

. LSA-R.S. 15:1081 reads as follows:
“§ 1081. Purpose
Notwithstanding any other provision of law to the contrary, the provisions of this Part shall serve as the sole statutory authorization under which the Department of Health and Human Resources shall make payments for the care and treatment of children in nonstate operated child caring agencies, child placing agencies, shelter care facilities, and maternity homes.”